IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID WILLIAM COSGRAY,

Plaintiff,

v. 2:24-cv-00081-MV-JMR

BILLY MASSINGILL, *Warden Eddy County Detention Center*, FNU ORTEGA, *Case Warden Corporal Eddy County Detention Center*, and FNU CHAVEZ, *Corporal Case Worker Eddy County Detention Center*,

Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on *pro se* Plaintiff David William Cosgray's Second Amended Complaint for Violation of Civil Rights (Doc. 31) and Defendants' *Martinez*[1] Report (Docs. 58, 77). In lieu of a single response brief, Plaintiff filed a series of Letters. *See* Docs. 59–63, 69, 72, 73, 75, 78–86. Defendants filed a reply brief. *See* Doc. 70. Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3), Senior United States District Judge Martha Vázquez referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 43. Having reviewed the submissions of the parties and being fully advised, I recommend that the Court grant summary judgment in Defendants' favor due to Plaintiff's failure to exhaust administrative remedies.

[1] *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978).

## I. Background and Procedural History

Plaintiff is an inmate in the custody of the New Mexico Corrections Department ("NMCD"). At the time he filed this lawsuit in January 2024, Plaintiff was a pretrial detainee housed at the Eddy County Detention Center ("ECDC") in Carlsbad, New Mexico. *See* Doc. 1; Doc. 31 at 12. During the pendency of this lawsuit, Plaintiff was convicted of criminal charges in state court and transferred to NMCD custody. *See* Amended Judgment and Sentence, filed in Case No. D-503-CR-2023-00340; Judgment and Sentence, filed in Case No. D-503-CR-2023-00195.[2] He is presently incarcerated at Central New Mexico Correctional Facility. Doc. 50.

The operative pleading is Plaintiff's second amended complaint, filed September 26, 2024.[3] *See* Doc. 31. Therein, Plaintiff names four ECDC officials as Defendants: (1) warden Billy Massingill; (2) case worker/corporal Ortega; (3) case worker/corporal Chavez; and (4) an unnamed "Security Captain." *Id.* at 2–3. Plaintiff specifically alleges that while he was housed at ECDC, Defendants Ortega and Chavez either ignored or repeatedly denied his requests for a physical law book, directing him to use a tablet instead. *Id.* at 4–5, 12. Plaintiff notes that the tablets initially lacked federal laws, though he acknowledges ECDC promptly resolved this issue. *Id.* at 12. Plaintiff states that he had difficulty navigating the legal materials on the tablets

---

[2] The Court takes judicial notice of the state court dockets in Plaintiff's criminal cases. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (Courts have "discretion to take judicial notice of publicly-filed records . . . concerning matters that bear directly upon the disposition of the case at hand.") (citation modified).

[3] The Court notes that Plaintiff commenced this civil rights lawsuit by using a form for a habeas corpus petition. *See* Doc. 1. He then filed an amended pleading using the form for a prisoner civil rights complaint (Doc. 16), followed by a series of letters regarding his case (Docs. 17–20, 22). To the extent these letters comprised any part of his claims, the Court ordered Plaintiff to file a second amended complaint incorporating the substance of the letters into a single pleading. *See* Doc. 25. Plaintiff thereafter filed the second amended complaint (Doc. 31) that is now the operative pleading in this case.

because he is largely computer illiterate. *Id.* Plaintiff further alleges that after ECDC staff refused to provide him with a physical law book, he asked his brother to send him a physical copy of "Jailhouse Lawyer by Columbia Law," which Plaintiff notes is available at other prison facilities. *Id.* at 12–13. Plaintiff states that he followed the proper procedures to receive this book, but Defendant Massingill refused to allow it into ECDC and sent the book back to Plaintiff's brother. *Id.* at 5, 8, 12–13.

On April 16, 2025, the Court screened Plaintiff's second amended complaint under 28 U.S.C. § 1915(e) and found it survived initial review. *See* Doc. 42. The Court determined that the second amended complaint "raises claims under the First Amendment, the Fourteenth Amendment, the Equal Protection Clause, and 42 U.S.C. § 1983." *Id.* at 2. The Court also found that Plaintiff sufficiently alleged that Defendants Massingill, Ortega, and Chavez were personally involved in the alleged wrongdoing. *Id.* at 3. The Court, however, dismissed the fourth Defendant, who Plaintiff identified only as "ECDC Security Captain," due to Plaintiff's failure to raise any claims against this party. *Id.* at 4.

## II. Defendants' *Martinez* Report

After Defendants Massingill, Ortega, and Chavez appeared in the case, the Court ordered them to investigate the incidents underlying Plaintiff's claims and submit a report pursuant to *Martinez*, 570 F.2d at 320, of their investigation in order to develop a factual or legal basis for determining whether Plaintiff has meritorious claims. Doc. 52. The Court ordered Defendants to provide all materials in their possession (or reasonably obtainable) relevant to Plaintiff's claims. *Id.* at 2. The Court specifically noted that relevant materials might include "[r]elevant policies and procedures" and "[a]ffidavits or declarations from defendants." *Id.*

In response to the Court's order, Defendants filed a single document that purports to be both a *Martinez* report and a motion for summary judgment. Doc. 58. Although Defendants titled this document "Defendants' *Martinez* Report" and stated that a "Motion for Summary Judgment based on the information in the *Martinez* Report" would be submitted "contemporaneously herewith," Defendants did not separately file a summary judgment motion. Doc. 58 at 1. Instead, Defendants' arguments in favor of summary judgment and supporting statement of material facts are included within the *Martinez* Report filing. *Id.* at 3–9. I recommend construing this document as Defendants' *Martinez* Report and Motion for Summary Judgment.

Plaintiff filed a series of letters in response to Defendants' *Martinez* Report and Motion for Summary Judgment. *See* Docs. 59–63, 69. Defendants filed a reply. *See* Doc. 70. Then, Plaintiff continued to submit letters addressing the *Martinez* Report and Defendants' summary judgment arguments. *See* Docs. 72, 73, 75. Upon an order from the Court, Doc. 76, Defendants filed a supplement to their *Martinez* Report, *see* Doc. 77. Plaintiff then filed a series of letter responses to the supplement. *See* Docs. 78–86.[4]

## III. Defendants' Motion for Summary Judgment

Defendants assert that they are entitled to summary judgment for three reasons. First, Defendants argue that Plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. *See* Doc. 58 at 4–5. Second, Defendants argue that their denial of Plaintiff's requests for a physical law book did not violate Plaintiff's First Amendment rights. *See* Doc. 58 at 5–7; Doc. 70 at 3–4. Third, Defendants argue they are entitled to qualified

[4] While procedurally unusual, out of deference to Plaintiff as a *pro se* litigant, I have meticulously reviewed the docket and considered all of Plaintiff's filings.

immunity. *See* Doc. 58 at 7–9; Doc. 70 at 4–5. In their reply, Defendants also assert that Plaintiff's response was untimely and failed to follow the requirements of the Court's Local Rules. *See* Doc. 70 at 1–2.

As discussed below, I recommend granting Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies and dismissing this lawsuit without prejudice. I therefore do not reach Defendants' other arguments. *See Mason v. Raemisch*, No. 17-cv-01013, 2019 WL 2775509, at *4 n.2 (D. Colo. July 2, 2019), *aff'd*, 840 F. App'x 381 (10th Cir. 2021) ("Because the Court grants summary judgment based on the Plaintiffs' failure to exhaust, it declines to address Defendants' arguments on the merits.").

**A. Facts**

Defendants submitted the following evidence with their *Martinez* Report and Motion for Summary Judgment: (1) Defendant Massingill's declaration (Doc. 58-1) and sworn affidavit (Doc. 77-1 at 1–2); (2) a copy of an ECDC policy prohibiting personal mail or books (Doc. 58-2); (3) Plaintiff's booking sheet (Doc. 58-3); (4) copies of Plaintiff's electronic requests for a law book (Doc. 58-4); and (5) a copy of ECDC's grievance policy (Doc. 77-1 at 3–5). While Plaintiff disputes many facts in the *Martinez* Report, he does not dispute "any material fact." *See* FED. R. CIV. P. 56(a).

On March 1, 2023, ECDC implemented a policy that the facility would no longer accept personal mail or books in order to "help curb the introduction of contraband into the facility and maintain the safety of all detainees and staff." *See* Defendant Massingill Decl. (Doc. 58-1) at 1 ¶

3; *see also* Doc. 58-2. Plaintiff was booked into ECDC on July 18, 2023, approximately four months after this policy went into effect. *See* Doc. 58-1 at 1 ¶ 4; Doc. 58-3.

In as early as July 2023, Plaintiff began requesting a physical law book. *See* Doc. 61 at 1. He also requested permission to receive a law book that he had ordered, which he identified as the Jailhouse Lawyers Manual published by Columbia University.[5] *Id*. Plaintiff's requests were denied, and Defendant Massingill informed Plaintiff that the book he ordered would be returned to the sender as it was not authorized. *See* Doc. 58-1 at 1 ¶ 7; Doc. 58-4 at 1–4. In his sworn affidavit, Defendant Massingill notes that he spoke with Plaintiff about his book requests and explained to him that he could not receive a physical book due to the facility's contraband policy. *See* Defendant Massingill Aff. (Doc. 77-1) at 1 ¶¶ 5–6.

Additionally, Defendant Massingill states he became aware on January 8, 2024, that Plaintiff wanted to review federal laws, which were unavailable on his ECDC-issued tablet. *See* Doc. 58-1 at 1 ¶¶ 8–9. Plaintiff filed this lawsuit two days later on January 10, 2024.[6] *See* Doc. 1 at 8. Defendant Massingill contacted the vendor to order federal materials, which were then

---

[5] Defendants allege that Plaintiff submitted the book requests in December 2023 and January 2024. *See* Doc. 58-1 at 1 ¶¶ 5–6; Doc. 58-4 at 1–3. However, Plaintiff alleges that he made earlier requests for a physical law book. *See* Doc. 61 at 1 ("When I got incarcerated on July 18, 2023[,] I repeat[ed]ly asked for a law book."); Doc. 62 at 2 (alleging he ordered a law book on July 25, 2023); Doc. 63 at 1 (stating he "started asking for a law book [on] July 19th, 2023" and then ordered his own law book after being "ignored for 6 months"); Doc. 69 at 1 (asserting that Defendants "left out key kisok [sic] messages"). This discrepancy is immaterial.

[6] *See Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005) ("[A]n inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court.").

made available on Plaintiff's tablet on January 22, 2024. *See* Doc. 58-1 at 1 ¶¶ 10–11. The Clerk's Office received Plaintiff's lawsuit three days later on January 25, 2024. Doc. 1.

Finally, Defendant Massingill states in his affidavit that Plaintiff did not submit any grievances regarding the denial of his requests for a physical law book. *See* Doc. 77-1 at 1 ¶ 7.

**B. Legal Standards**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and it is material if under the substantive law it is essential to the proper disposition of the claim." *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Tr.*, 744 F.3d 623, 628 (10th Cir. 2014). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.* "[W]here the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

For purposes of summary judgment, the Court treats a prisoner's complaint as an affidavit if it alleges facts based on the prisoner's personal knowledge and has been sworn under

penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). The Court also treats a *Martinez* report as an affidavit. *Id.* The Court may use the report and its supporting documents in determining whether to grant summary judgment if the report's statements are based on personal knowledge and are sworn under penalty of perjury. *Id.* The Court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings that conflict with sworn pleadings or affidavits. *Id.* at 1109. As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

Finally, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. However, "it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

**C. Exhaustion Analysis**

*i. The PLRA's Exhaustion Requirement*

Section 1997e(a) of the PLRA requires that no action be brought "with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), including suits where an inmate is only seeking money damages, *Booth v. Churner*, 532 U.S. 731, 734 (2001). The PLRA's exhaustion requirement extends to pretrial detainees such as Plaintiff was when he first filed this lawsuit. *See Peoples v. Gilman*, 109 F. App'x 381, 383 (10th Cir. 2004) (unpublished) (citing 42 U.S.C. § 1997e(h)).

Proper exhaustion requires a plaintiff to comply with a prison's administrative procedures, including deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Exhaustion occurs when an inmate fully complies with prison grievance procedures; substantial compliance is not enough." *Wiggins v. Hatch*, No. 24-2159, 2025 WL 2925385, at *3 (10th Cir. Oct. 15, 2025). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Failure to exhaust is an affirmative defense to be raised and proven by the defense. *See Jones*, 549 U.S. at 216. Accordingly, a defendant has "the burden of asserting the affirmative defense of failure to exhaust and of demonstrating that no material fact exists concerning whether the plaintiff exhausted his administrative remedies." *Wiggins*, 2025 WL 2925385, at *3 (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). Once a defendant shows the plaintiff failed to exhaust, "the burden shifts to the plaintiff to show the remedies were unavailable." *Id.* Factual disputes about administrative exhaustion are properly resolved by district courts at the summary judgment stage rather than being passed on to a jury. *Estrada v. Smart*, 107 F.4th 1254, 1262 (10th Cir. 2024).

Failure to exhaust does not deprive a federal court of jurisdiction over the matter. *Steele v. Fed. Bureau of Prison*, 355 F.3d 1204, 1208 (10th Cir. 2003), *abrogated on separate grounds by Jones*, 549 U.S. at 199. However, exhaustion is mandatory under the PLRA and "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. A court, therefore, must dismiss any unexhausted claims, though dismissal without prejudice is usually preferable. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

*ii. ECDC's Grievance Policy*

ECDC Policy 600.07 covers "Detainee Request/Grievance Procedures" at the facility. *See* Doc. 77-1 at 3–5. This policy was in effect at the time of Plaintiff's detention in 2023 and 2024. *Id.* at 1 ¶ 3. The purpose of ECDC Policy 600.07 is to provide detainees with an "internal request/grievance mechanism for the resolution of issues arising from institutional or juridical matters." *Id.* at 3. Under the policy, a detainee may submit a request/grievance "at any time to bring a problem to the attention of staff, or to appeal a specific action." *Id.* at 4.

The process is structured as follows. First, a detainee must complete and submit a request/grievance form electronically using the Securus Electronic Request Form System via the kiosks located in the ECDC dayrooms. *Id.* at 3. The policy specifies that the detainee will receive a response within three working days, unless unforeseen circumstances cause a delay. *Id.* at 4. Second, if the detainee is not satisfied with the initial decision, the detainee has three days after receiving notice of the decision to submit an appeal to the warden through the Securus system. *Id.* at 5. The warden then has ten working days to decide the appeal and reply to the detainee. *Id.*

*iii. Failure to Exhaust*

Defendants have met their initial burden of demonstrating that no genuine dispute of material fact exists regarding their affirmative defense of failure to exhaust. The record evidence shows that Plaintiff failed to initiate the grievance process at ECDC. *See* Defendant Massingill Aff. (Doc. 77-1) at 1 ¶ 7 (stating that Plaintiff did not submit any grievances regarding the denial of his requests for a physical law book).

Accordingly, Plaintiff must "demonstrate with specificity the existence of a disputed material fact" regarding his failure to exhaust. *See Estrada*, 107 F.4th at 1261 (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). In his various filings in response to

Defendants' *Martinez* Report and Motion for Summary Judgment, Plaintiff does not deny that he took no steps to initiate and complete ECDC's grievance process regarding the claims at issue in this case. *See generally* Docs. 59–63, 69, 72, 73, 75, 78, 79, 81–86. Nor does Plaintiff present any evidence to counter Defendant Massingill's affidavit assertion that Plaintiff did not submit a grievance following the denial of his book requests. Thus, no dispute of material fact exists. *See* FED. R. CIV. P. 56(a). I therefore recommend finding that Plaintiff failed to exhaust his administrative remedies regarding the claims raised in this lawsuit.

*iv. Exceptions to the Exhaustion Requirement*

Since there is no dispute that Plaintiff failed to exhaust his administrative remedies, I next consider whether Plaintiff has shown that the "remedies were unavailable to him." *See Tuckel*, 660 F.3d at 1254 ("Once a defendant proves that a plaintiff failed to exhaust, . . . the onus falls on the plaintiff to show that remedies were unavailable to him[.]"). Administrative remedies are deemed unavailable if the administrative process: (1) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) is "so opaque that it becomes, practically speaking, incapable of use"; or (3) is thwarted by prison administrators "through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016); *see also Estrada*, 107 F.4th at 1270 (same).

Here, Plaintiff has not satisfied this burden. Plaintiff has not made specific allegations or provided evidence that any ECDC employee "thwart[ed him] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. He does not allege that ECDC's grievance process was "so opaque" that it was "incapable of use." *Id.* Nor does Plaintiff assert that the process operated as a dead end. *Id.* Rather, he primarily contends that filing a grievance would have been futile because Defendant Massingill

advised him "there was no way he was allowing that book into his jail." *See* Doc. 31 at 8; Doc. 79 at 1. But Plaintiff's belief that it was pointless to file a grievance does not excuse him from having to comply with the PLRA's exhaustion requirement. Indeed, the Tenth Circuit has explained that exhaustion of available administrative remedies is required "even where the available remedies would appear to be futile at providing the kind of remedy sought." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation modified) (citing *Booth,* 532 U.S. at 740).

Plaintiff also asserts that he was unaware of ECDC's grievance procedures because he was not provided with a copy of ECDC Policy 600.07. *See* Doc. 79 at 3–4; Doc. 62 at 2. There is no authority under the PLRA for waiving or excusing compliance with the exhaustion requirement based on a prisoner's asserted ignorance of the correctional facility's grievance procedures. *See Turrietta v. Barreras*, 91 F. App'x 640, 642 (10th Cir. 2004) (unpublished) ("We also hold that the mandatory exhaustion requirement cannot be excused on the ground that the detainee was not informed of the grievance procedure."); *Simmons v. Stus*, 401 F. App'x 380, 382 (10th Cir. 2010) (unpublished) (holding that "even accepting plaintiff's allegation that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement."); *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 272–73 (10th Cir. 2003) (unpublished) (concluding that the district court did not err in rejecting prisoner's claim that his unawareness of the grievance procedure excused the PLRA's exhaustion requirement); *Galvan v. Bd. of Cnty. Commr's for Curry Cnty., New Mexico*, No. 14-cv-619 KG/WPL, 2016 WL 10539078, at *5 (D.N.M. May 19, 2016) (stating that "the law is clear that [a prisoner's] knowledge or lack of knowledge of the administrative grievance procedures is irrelevant for purposes of PLRA exhaustion of administrative remedies.").

Finally, Plaintiff argues that Defendant Massingill, as ECDC's warden, can "make up or disregard any policy." Doc. 62 at 2; Doc. 84 at 1; *see also* Doc. 59 at 1 (arguing Defendants "have the power to change, alter, add & delete any administrative policys [sic] to fit their agenda"). Plaintiff has not submitted any evidence suggesting that ECDC officials took any action to change the facility's grievance procedures during the time period Plaintiff was housed at the facility. Plaintiff's speculations are insufficient to establish a genuine issue of material fact regarding the availability of administrative remedies. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.")

Accordingly, I recommend finding that Plaintiff has not satisfied his burden of showing that ECDC's administrative remedies were unavailable to him.

## IV. Recommendation

Based on the foregoing, I recommend the Court:

(1) grant Defendants' Motion for Summary Judgment (Doc. 58) because Plaintiff failed to exhaust his administrative remedies and

(2) dismiss this lawsuit without prejudice. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005) ("[A] dismissal based on lack of exhaustion should ordinarily be *without* prejudice.").

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or**

**appellate court. *Id*. In other words, if no objections are filed, no appellate review will be allowed.**

JENNIFER M. ROZZONI
United States Magistrate Judge